IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRANDON DANTE BARNES,    :    Civil No. 3:25-cv-372
                         :
        Plaintiff        :
                         :    (Judge Mariani)
                         :
    v.                   :
                         :
LT. TREVERTHAN, *et al.*,  :
                         :
        Defendants       :

## MEMORANDUM

Plaintiff Brandon Dante Barnes ("Barnes"), an inmate housed, at all relevant times, at the State Correctional Institution, Dallas, Pennsylvania ("SCI-Dallas"), initiated this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding via an amended complaint. (Doc. 28). Named as Defendants are Lieutenant Treverthan, Facility Manager Kevin Ransom, Facility Manager Assistant and Grievance Coordinator Nichole Hogan, Hearing Examiner Charlie McKeown, Deputy Superintendent of Centralized Services ("DSCS") Bohinski, Corrections Classification Program Manager ("CCPM") Innis, Major Goyne, Lieutenant Guzenski, Unit Manager Reich, Licensed Psychologist Manager ("LPM") Ashton, Psychological Services Specialist ("PSS") Austin, Deputy Contreras, Lieutenant Gavlick, and Unit Manager B. Namowicz. (*Id.* at 1-3).

Presently before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 32). The motion is fully briefed and ripe for resolution.[1] For the reasons set forth below, the Court will grant the motion in part and deny it in part.

Additionally, on April 14, 2025, Defendants filed a suggestion of death notifying the Court and Barnes that Defendant Ransom passed away on January 7, 2025. (Doc. 13). The Court concludes that Barnes' claims against Defendant Ransom are extinguished by his death.

## I.    Allegations of the Amended Complaint

Barnes asserts that he arrived at SCI-Dallas in August 2022 and requested to have a prohibited visitor added to his visitor list. (Doc. 28 ¶ 1). His request was denied by an unidentified individual, and he was advised to resubmit his request in six months. (*Id.*). In April 2023, Barnes resubmitted his request for an amendment to his visitation list. (*Id.* ¶ 3).

On September 13, 2023, Barnes asked Counselor McCollough (a non-party) about the status of his visitor request, who informed Barnes that the Security Department "was delaying the process by holding the 'Vote Sheet'". (*Id.* ¶ 4). In response, Barnes verbally threatened to file an inmate grievance regarding issues with his visitor list. (*Id.*). On that same date, September 13, 2023, Defendant Treverthan filed inmate misconduct D844535

---

[1]    Barnes' brief in opposition to Defendants' motion to dismiss contains facts that are not expressly set forth in the amended complaint. (*See* Doc. 38). The Court may not consider such allegations because a complaint cannot be amended by way of an opposition brief. *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

against Barnes claiming that Barnes gave another person instructions over the phone about how to smuggle illicit drugs into SCI-Dallas through the visitation room. (*Id.* ¶ 5; Doc. 1-2, at 5). Barnes alleges that Defendant Treverthan's security team placed him in the Restricted Housing Unit ("RHU") on September 13, 2023. (Doc. 28 ¶ 5). At the disciplinary hearing for this misconduct, Barnes pled not guilty and avers that the misconduct should have been dismissed because: (1) the incident date on the misconduct was August 30, 2023, but the inmate misconduct was written on September 13, 2023; (2) the inmate misconduct states that Barnes was attempted to introduce a controlled substance into SCI-Dallas, but does not say what Barnes said or did to allegedly attempt to smuggle drugs into SCI-Dallas; (3) Barnes never received a misconduct like this one, he does not do drugs, and he was enrolled in the University of Scranton pursuing an associate's degree; (4) the inmate misconduct was based solely upon an assumption; and (5) he never had a visit, no visit was scheduled, and there is nothing to show he was "attempting or doing anything." (*Id.* ¶ 7). Barnes "believe[s]" this misconduct was issued in "[r]etaliation to a grievance [he] filed and a grievance [he] told [his] counselor [he] was filing against security for another reason." (*Id.*).

On September 18, 2023, Defendant McKeown, the Hearing Examiner, found Barnes guilty of possession of a dangerous or controlled substance, and unauthorized use of a telephone, kiosk, or mail. (*Id.* ¶ 8). Barnes states that Defendant McKeown reviewed Defendant Treverthan's investigative report prior to finding him guilty of the misconduct. (*Id.* ¶¶ 8-10). He claims that Defendant McKeown's failure to review the audio recordings of the

phone call was a violation of his rights. (*Id.*). As a result of the finding of guilt, Defendant

McKeown sanctioned Barnes to 60 days suspension of privileges, 90 days in disciplinary

custody, and a six-month suspension of visitation privileges. (*Id.* ¶ 11). Barnes also alleges

that he lost his college enrollment. (*Id.* ¶ 17). Barnes asserts that he appealed the

misconduct to the Program Review Committee ("PRC")—consisting of Defendants

Contreras, Goyne, and Namowicz—and then to Defendant Superintendent Ransom. (*Id.* ¶

12). The Hearing Examiner's finding of guilt was upheld on each level of review. (*Id.*).

During his disciplinary confinement for this misconduct, Barnes alleges that he

suffered psychological distress and fear of Defendant Treverthan, and was subjected to the

following conditions: mice infestation; no laundry services for blankets or undergarments; no

hot water in cells to wash his clothes, bathe, or prepare food or drinks; only three 10 minute

opportunities per week to shave and shower; no access to mirrors; an antiquated ventilation

system in the cell; no winter hats; permanent lights; no phone privileges; a low calorie diet;

no commissary; no call button in the cell; no access to safe and practical exercise

equipment; no programming, vocation, or education services; no human to human

interaction; the toilet timers locked plumbing for one hour if flushed twice in five minutes,

subjecting him to smells; bed bugs; and he was subjected to the chemicals used to

exterminate the bed bugs without an air filtration system which caused blood to come from

his lungs when he coughed. (*Id.* ¶¶ 13, 15, 16).

4

Barnes claims that he complained about these conditions to Defendants Bohinski, Innis, Goyne, Guzenski, Reich, Ashton, Austin, Contreras, and Gavlick, either through written correspondence, grievances, or during their rounds in the RHU. (*Id.* ¶ 14). Barnes alleges that they failed to act on his complaints. (*Id.*).

On September 26, 2023, November 3, 2023, and December 26, 2023, Barnes asserts that he filed inmate grievances about these issues, but that Defendant Hogan failed to respond. (*Id.* ¶ 21). Barnes then filed a grievance against Defendant Hogan alleging that she failed to respond to his grievances. (*Id.*). In response, Defendant Hogan advised Barnes that she did "in fact respond" and provided Barnes with a copy of her response, which Barnes claims was post-dated. (*Id.*).

On September 24, 2023, Barnes asserts that he filed a grievance regarding his pulmonary issues. (*Id.* ¶ 22). He maintains that this grievance was fully exhausted. (*Id.*).

On December 6, 2023, Barnes asserts that he filed a grievance against Defendant Ransom alleging that he failed to respond to his request for an amended visitor list. (*Id.* ¶ 23). He maintains that this grievance was fully exhausted. (*Id.*).

On December 20, 2023, Defendant Treverthan allegedly went Barnes' cell to "taunt, harass and intimidate" him. (*Id.* ¶ 18).

## II.    Legal Standard

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The

plaintiff must aver "factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129

S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic

recitation of the elements of a cause of action will not do.'"  *DelRio-Mocci v. Connolly Prop.*

*Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words,

"[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)

(internal citations and quotation marks omitted).  A court "take[s] as true all the factual

allegations in the Complaint and the reasonable inferences that can be drawn from those

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements."  *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint:  First, the court must take note of the
> elements a plaintiff must plead to state a claim.  Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth.  Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

6

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## III.    **Discussion**

### A.    Retaliation Claim against Defendant Treverthan

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three elements. First, a plaintiff must prove that he was engaged in constitutionally protected activity. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary

7

firmness' from exercising his First Amendment rights." *Id.* (quoting *Suppon v. Dadonna,* 2013 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Rauser,* 241 F.3d at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. *See Lape v. Pennsylvania,* 157 F. App'x 491, 498 (3d Cir. 2005). Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation. *See Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 503 (3d Cir. 1997). The Third Circuit has noted that an inmate can satisfy this burden "with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson v. Rozum,* 834 F.3d 417, 422 (3d Cir. 2002).

If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser,* 241 F.3d at 334. "This is often referred to as the 'same

decision defense." *Watson*, 834 F.3d at 422.  If the prison officials can make this showing, it defeats the retaliation claim.  *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

Barnes alleges that Defendant Treverthan filed an inmate misconduct against him on September 13, 2023, and threatened and harassed him, in retaliation for Barnes' threat to Counselor McCollough that he would be filing a grievance regarding his visiting privileges. (Doc. 28 ¶¶ 4-5).  Defendants move to dismiss this claim on the first and third *Rauser* prongs.[2]  (Doc. 35, at 15-17).

With respect to the first *Rauser* prong, Defendants do not dispute that the filing of an inmate grievance constitutes a constitutionally protected activity.  (Doc. 35, at 15).  *See Fantone v. Latini*, 780 F.3d 184, 192 n.8 (3d Cir. 2015) ("The filing of a prison grievance is an activity protected by the First Amendment.").  However, Defendants argue that it is not well-established that an inmate's verbal threat to file a grievance is constitutionally protected conduct.  (Doc. 35, at 15-16).  In *Watson*, 834 F.3d 417, a split panel of the Third Circuit Court of Appeals expanded the protected conduct element of a retaliation claim to include threats to file a grievance, the majority observing that "we cannot discern a substantive

---

[2]    With respect to the second prong of a retaliation claim, Defendants acknowledge that "at this stage, filing of a false misconduct *may* constitute as an adverse action." (Doc. 35, at 15).  However, Defendants also argue that to the extent Barnes alleges that Defendant Treverthan's alleged verbal comments constitute an adverse action, this claim fails. (*Id.*).  Generally speaking, verbal threats and harassment do not constitute adverse action for purposes of establishing a First Amendment retaliation claim.  *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012); *Burgos v. Canino*, 358 F. App'x 302, 306 (3d Cir. 2009) ("[T]hreats alone do not constitute retaliation...the claim relating to the threat failed.").  Therefore, Defendant Treverthan's alleged verbal comments are insufficient to satisfy the adverse action element of a retaliation claim.

distinction between retaliation for informing prison officials of an intent to file a grievance or requesting the necessary forms to do so on the one hand, and actually filing such a grievance on the other." 834 F.3d at 423. For purposes of this Memorandum, and in line with *Watson*, the Court concludes that Barnes' threat to file a grievance amounts to protected activity. The Court nevertheless finds that Barnes failed to allege causation with respect to Defendant Treverthan's actions.

As to the third *Rauser* prong, Defendants argue that Barnes cannot establish causation for his claims. (Doc. 35, at 16-17). As stated, Barnes alleges that Defendant Treverthan filed an inmate misconduct against him and threatened and harassed him, in retaliation for Barnes' threat to Counselor McCollough that he would file a grievance. Barnes does not allege that Defendant Treverthan knew about Barnes' threat to file a grievance, nor does he allege that he filed any grievances against Defendant Treverthan. Banes acknowledges that this misconduct was issued in "[r]etaliation to a grievance [he] filed and a grievance [he] told [his] counselor [he] was filing against security for another reason." (Doc. 28 ¶ 7). It is well-settled that causation cannot be inferred simply by asserting that a plaintiff pursued some protected activity against a defendant or nonparty prison official who is not the alleged perpetrator of the retaliatory adverse action. *See, e.g., Nunez v. Wetzel*, No. 1:21-cv-01484, 2023 WL 2385931, at *5 (M.D. Pa. Mar. 6, 2023) (collecting cases); *Kendrick v. Hann*, No. 1:19-cv-01642, 2021 WL 2914986, at *9 (M.D. Pa. July 12, 2021); *Victor v. Lawler*, No. 3:07-cv-2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec.

3, 2010); *Evans v. Rozum*, No. 07-cv-230J, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) ("[T]here is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others." (second alteration in original)); *Royster v. Beard*, No. 1:06-cv-0842, 2008 WL 2914516, at *6 (M.D. Pa. July 24, 2008) (concluding that plaintiff failed to satisfy the causal connection for his retaliation claim against defendant because previous grievance did not name or impact that defendant), *aff'd* 308 F. App'x 576 (3d Cir. 2009) (nonprecedential). Such general assertions fail to establish or even infer knowledge of the protected conduct, and they likewise fail to show why a defendant would take the adverse action. Barnes' retaliation claim against Defendant Treverthan thus fails to satisfy the third element of a retaliation claim and will be dismissed with prejudice and without leave to amend as any attempt to amend would be futile.

B.    Eighth Amendment Claim against Defendant Treverthan

The Eighth Amendment's prohibition of cruel and unusual punishment imposes constitutional limitations on a prisoner's conditions of confinement. *See Graham v. Connor*, 490 U.S. 386 (1989); *Rhodes v. Chapman*, 452 U.S. 337 (1981). "[A] prison official violates the Eighth Amendment only when two requirements are met." *Gilblom v. Gillipsie*, 435 F. App'x 165, 168 (3d Cir. 2011) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

First, the plaintiff must allege a deprivation that is "objectively, sufficiently serious." *Gilblom*, 435 F. App'x at 168 (quoting *Farmer*, 511 U.S. at 834). The objective component is narrowly defined: only "extreme deprivations" suffice to make out an Eighth Amendment

claim. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (citing *Rhodes*, 452 U.S. at 347). These needs include "food, clothing, shelter, sanitation, medical care and personal safety." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997). "[A] totality of the circumstances test must be applied to determine whether the conditions of confinement constitute cruel and unusual punishment." *Tillery v. Owens*, 907 F.2d 418, 427 (3d Cir. 1990).

Second, the plaintiff must show that the prison official "subjectively acted with a sufficiently culpable state of mind, i.e., deliberate indifference." *Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective component. *Wilson*, 501 U.S. at 298.

Barnes alleges that Defendant Treverthan violated his Eighth Amendment rights when he issued a false misconduct charge against him. (Doc. 28 ¶ 25). Courts have widely held that "false misconduct charges are not 'sufficiently serious' that they result 'in the denial of the minimal civilized measure of life's necessities.'" *Booth v. Pence*, 354 F. Supp. 2d 553, 558-59 (E.D. Pa. 2005) (quoting *Farmer*, 511 U.S. at 832). This is because "[f]alse misconduct charges themselves do not constitute the denial of 'basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety.'" *Id.* (quoting *Griffin*, 112 F.3d at 709). Consequently, the issuance of a false misconduct does not satisfy the

12

objective element of the *Farmer* analysis and cannot form the basis for an Eighth Amendment claim against Defendant Treverthan. *Id.*

Barnes also alleges that Defendant Treverthan verbally harassed and threatened him. (Doc. 28 ¶ 18). Defendant Treverthan's alleged statements or threats to Barnes, without any accompanying physical injury, do not amount to malicious behavior violative of the Eighth Amendment. *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) ("[V]erbal threats or taunts, without more, are not sufficient to constitute a violation of the Eighth Amendment."); *Quiero v. Muniz*, No. 14-225, 2015 WL 13738994, at *5 (M.D. Pa. Aug. 3, 2015) ("Allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under § 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner."). This claim fails because Barnes cannot state a claim for cruel and unusual punishment under the Eighth Amendment by alleging only verbal harassment or threats. The Court will dismiss the Eighth Amendment claim with prejudice and without leave to amend.

C.    Claims against Defendants Hogan, Innis, Bohinski, Contreras, Ashton, Gavlick, Guzenski, Goyne, Austin, Reich, and Namowicz

Defendants argue that the claims against Defendants Hogan, Innis, Bohinski, Contreras, Ashton, Gavlick, Guzenski, Goyne, Austin, Reich, and Namowicz are misjoined and must be dismissed pursuant to Federal Rule of Civil Procedure 20. (Doc. 35, at 19-21).

Under Rule 20, claims against multiple defendants may be joined in the same action only if:

13

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all defendants will arise in the action.

FED. R. CIV. P. 20(a)(2).

"For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)). Claims "only need to share a single question of law or fact to meet this 'very low threshold.'" *Price v. New Castle Police Dep't,* No. 2:20-cv-1274-RJC, 2021 WL 322228, at *4 (W.D. Pa. Feb. 1, 2021) (quotations omitted).

In this case, Barnes has asserted civil rights claims based on: (1) the claims against Defendants Treverthan and McKeown related to the September 13, 2023 inmate misconduct; (2) the conditions of confinement claims against Defendants Innis, Bohinski, Contreras, Ashton, Gavlick, Guzenski, Goyne, Austin, Reich, and Namowicz related to his placement in the RHU; and (3) Defendant Hogan's alleged denial or failure to respond to Barnes' grievances. (Doc. 28).

Upon review of Barnes' amended complaint, the Court concludes that it does not violate Rule 20, and it alleges sufficient facts to satisfy the joinder requirements. Barnes alleges a sequence of events that occurred at SCI-Dallas that arose out of the same

14

transaction and are loosely based on the same facts.  Barnes alleges that Defendant

Treverthan issued a misconduct against him on September 13, 2023, and that Defendant

McKeown ultimately found him guilty of the misconduct on September 18, 2023.  (Doc. 28

¶¶ 5, 8).  Also on September 13, 2023, Barnes asserts that he was placed in the RHU and

allegedly subjected to unconstitutional conditions.  (Id. ¶¶ 5, 13, 15, 16).  Barnes then

alleges that on September 26, 2023, November 3, 2023, and December 26, 2023, he filed

inmate grievances concerning those unconstitutional conditions, but Defendant Hogan failed

to respond.  (Id. ¶ 21).  The Court finds that there is a comprehensible theory linking all of

these claims that permits joinder under Rule 20.  The Court, therefore, declines to grant

Defendants' motion to dismiss on this basis.[3]

D.    <u>Procedural Due Process Claims against Defendants McKeown and Hogan</u>

The Due Process Clause of the Fourteenth Amendment prohibits states from

"depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. CONST.

amend. XIV, § 1.  The Supreme Court has mandated a two-part analysis of a procedural

due process claim: first, "whether the asserted individual interests are encompassed within

the...protection of 'life, liberty or property[,]'" and second, "if protected interests are

implicated, we then must decide what procedures constitute 'due process of law.'"

*Ingraham v. Wright*, 430 U.S. 651, 672 (1977).  If there is no protected liberty or property

_____

[3]    With respect to Defendant Hogan, although the Court finds that the claims against her should not be dismissed under Rule 20, the Court finds that the claims against Defendant Hogan fail on the merits, as set forth below.

interest, it is unnecessary to analyze what procedures were followed when an alleged deprivation of an interest occurred.

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court shifted the focus of the liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner. *Id.* at 481. The Court reasoned that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence. *Id.* at 485. Accordingly, the *Sandin* Court, focusing on the nature of the punishment instead of on the words of any regulation, held that the procedural protections in *Wolff v. McDonnell*, 418 U.S. 539 (1974), were inapplicable because the "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Sandin*, 515 U.S. at 486. For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

Here, Barnes' placement in disciplinary custody for 90 days, 60-day restriction of privileges, and six-month suspension of visitation privileges were the only restraints he experienced because of the allegedly defective misconduct hearing. Courts have held that placements in disciplinary custody for periods far longer than those experienced by Barnes did not implicate a liberty interest protected by the Due Process Clause. *See Sandin*, 515 U.S. at 483; *Griffin*, 112 F.3d at 708 (confinement in administrative custody for 15 months

16

with only hour of exercise per day five days per week did not amount to an atypical and significant hardship and thus did not deprive prisoner of a liberty interest); *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (holding that seven-month confinement in SHU based on false reports did not implicate a protected liberty interest). *See also Henry v. Wilson*, 2007 WL 2746717, at *7 (W.D. Pa. Sep. 17, 2007) (holding that because inmate did not have a liberty interest in being free from disciplinary confinement there was no process due at his misconduct hearing); *Brown v. Hannah*, 850 F.Supp.2d 471, 478 (M.D. Pa. 2012) (dismissing the plaintiff's claims that his procedural due process rights were violated when he was issued a falsified misconduct report and the hearing examiner denied a requested witness and the opportunity to cross-examine the accuser, and sanctioned him to 60 days in disciplinary confinement); *Jefferson v. Wolfe*, 2006 1947721, at *16 (W.D. Pa. July 11, 2006) (finding Defendant Moslak's refusal to allow plaintiff to call witnesses at misconduct hearing did not violate due process because plaintiff had no liberty interest). Thus, Barnes cannot premise a viable due process claim against Defendant McKeown upon his relative brief confinement in disciplinary custody.

As stated, Barnes alleges that Defendant McKeown found him guilty at the misconduct hearing and that Defendant Hogan dismissed or failed to respond to his grievance. This aspect of his due process claim also cannot survive because none of the alleged actions or omissions of Defendants McKeown or Hogan implicated any liberty interest of Barnes. *See, e.g.*, See *McCullough v. Miller*, 330 F. App'x 330, 333 (3d Cir.

17

2009) (finding no due process violation where inmate alleged the defendants had knowledge of the incident and "exercised acquiescence" by "approving false misconduct reports, affirming sanctions, or refusing to investigate the assault"); *Mutschler v. Tritt*, 2018 WL 4184320, at *3-4 (M.D. Pa. Aug. 31, 2018) (holding that although allegation that chief hearing examiner failed to investigate plaintiff's underlying misconduct hearing and upheld the misconduct charge based on an inadequate record were sufficient to show his personal involvement, the claim nevertheless failed because the resulting sanction of 160 days confinement in disciplinary custody did not implicate a protected liberty interest under *Sandin*); *Speight v. Sims*, 283 F. App'x 880, 881 (3d Cir. 2008) (there is no constitutionally protected interest in the inmate grievance procedure). Moreover, Barnes' allegation that he lost visiting privileges also does not sufficiently establish a liberty interest. *Flanagan v. Shively*, 783 F. Supp. 922, 934 *aff'd* 980 F.2d 722 (3d Cir. 1992) ("Inmates have no constitutional right to visitation...Prison authorities have discretion to curtail or deny visitation if they deem appropriate, and no due process right is implicated in the exercise of that discretion."). Because none of the conduct of Defendants McKeown or Hogan implicated a liberty or property interest of Barnes, no due process rights of Barnes were triggered.

Barnes also cannot find a protected liberty interest in the prison's hearing policies and rules that he alleges Defendants McKeown and Hogan failed to follow. *See Thomas v. Rosenmeyer*, 199 F. App'x 195, 197 (3d Cir. 2006). The Third Circuit Court of Appeals has

18

noted, "to the extent [plaintiff] asserts that the prison's failure to comply with state procedures deprived him of due process, state procedures, in themselves, do not confer a liberty interest protected by the due process clause." *Id.* at 198.  Indeed, because "an inmate has no constitutional right to a grievance procedure," allegations that an official wrongfully denied a grievance or grievance appeal fails to support a claim.  *Woodell v. Wenerowicz*, 2019 WL 4139264, at *17 (E.D. Pa. Aug. 30, 2019) (citing *Tapp v. Proto*, 404 F. App'x 563, 566 (3d Cir. 2010)); *Altenbach v. Ianuzzi*, 646 F. App'x 147, 151 (3d Cir. 2016) ("To the extent that his claim is based on Holly's alleged failure to satisfactorily resolve his grievances, the District Court was….correct in dismissing it."); *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (holding that involvement in post-incident grievance process is not a basis for § 1983 liability).  Thus, Barnes "has no constitutional liberty interest in the defendants following the procedures allegedly mandated by state law" relating to prison misconduct hearings or grievances.  *Deans v. Floyd*, 2023 WL 3729300, at *13 (W.D. Pa. May 30, 2023) (quoting *Dantzler v. Beard*, 2007 WL 5018184, at *5 n.7 (W.D. Pa. Dec. 6, 2007), *report and recommendation adopted*, 2008 WL 744740 (W.D Pa. Mar. 18, 2008) (citations omitted)).

Because Barnes was not deprived of a protected liberty interest, he has no ground upon which to base a Fourteenth Amendment procedural due process claim against Defendants McKeown or Hogan.  Accordingly, the procedural due process claims against

Defendants McKeown and Hogan will be dismissed with prejudice as any attempt to amend to cure their deficiencies would be futile.

E.    Substantive Due Process Claim against Defendant Hogan

Barnes claims that Defendant Hogan violated his right to substantive due process when she allegedly failed to respond to his grievance and dismissed his claims as untimely. (Doc. 28 ¶ 21, 31).

The law is clear that to state a claim for substantive due process, "a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Lear v. Zanic*, 524 Fed. Appx. 797, 801-02 (3d Cir. 2013) (quoting *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008)). As discussed above, Barnes does not have a protected liberty interest in a grievance process. *See Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) ("prison inmates do not have a constitutionally protected right to a grievance process"); *Davis v. Samuels*, 608 F. App'x 46, 48-49 (3d Cir. 2015). Furthermore, "the relevant level of arbitrariness required in order to find a substantive due process violation involves not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times 'conscience shocking' or 'deliberate indifference.'" *Hunterson v. DiSabato*, 308 F.3d 236, 246-47 (3d Cir. 2002). Barnes' allegation that Defendant Hogan failed to respond to his grievance and/or dismissed his grievance as untimely falls well short of this standard. This claim will be dismissed with prejudice and without leave to amend.

F.    Failure to Assert a Request for Relief against Defendants Innis, Bohinski, Contreras, Ashton, Gavlick, Guzenski, Goyne, Austin, Reich, and Namowicz

Defendants argue that the claims against Defendants Innis, Bohinski, Contreras, Ashton, Gavlick, Guzenski, Goyne, Austin, Reich, and Namowicz must be dismissed because, "despite Plaintiff's effort to present a lengthy and detailed demand for relief section of his Complaint, (Doc. 28 at ¶¶ 39-43), he failed to identify any relief sought with respect to [these Defendants]" in violation of Federal Rule of Civil Procedure 8(a)(3). (Doc. 35, at 26).

Under Rule 8(a)(3), a complaint must contain "a demand for the relief sought[.]" FED. R. CIV. P. 8(a)(3). Barnes' amended complaint contains a prayer for damages and specifies the relief he seeks. (Doc. 28 ¶¶ 39-43). While the prayer for relief does not identify the relief sought with respect to Defendants Innis, Bohinski, Contreras, Ashton, Gavlick, Guzenski, Goyne, Austin, Reich, and Namowicz, this failure is not a basis for dismissal. *See, e.g., Onely v. Redner's Markets, Inc.*, No. 21-cv-4785, 2022 WL 1773606, at *6 (E.D. Pa. June 1, 2022) ("A Rule 8(a)(3) prayer for relief is not subject to dismissal under Rule 12(b)(6) because, for purposes of the 'sufficiency of a pleading,...the demand for judgment is not considered part of the claim.'") (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1255 (4th ed. Apr. 2022 Update)); *Global Arena, LLC v. Eterpreting, LLC*, No. 16-3634, 2016 WL 7156396, at *2 (E.D. Pa. Dec. 8, 2016) (finding that a demand for relief under Rule 8(a)(3) "is not the proper subject of a Rule 12(b)(6)

21

motion"). Barnes' amended complaint contains a coherent prayer for relief, and Defendants'
motion will be denied on this ground.

G.    Lack of Personal Involvement of Defendants Innis, Bohinski, Contreras,
Ashton, Gavlick, Guzenski, Goyne, Austin, Reich, and Namowicz

To state a claim for a civil rights violation under 42 U.S.C. § 1983, a plaintiff must
allege facts to support that each defendant, acting under color of state law, deprived the
plaintiff of a right secured by the Constitution or laws of the United States. *Groman v.
Township of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo*, 446 U.S.
635, 640 (1980)). The plaintiff "must show that each and every defendant was 'personal[ly]
involve[d]' in depriving him of his rights." *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa.
2006) (alterations in original) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir.
2005)). This means that each defendant must have played an affirmative part in the
complained-of misconduct. *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) ("A
defendant in a civil rights action 'must have personal involvement in the alleged wrongs to
be liable,' and 'cannot be held responsible for a constitutional violation which he or she
neither participated in nor approved.'") (citations omitted); *Iqbal*, 556 U.S. at 677 ("each
Government official, his or her title notwithstanding, is only liable for his or her own
misconduct").

The requirement of personal involvement applies with equal force to supervisory
defendants. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (liability for
supervisory officials must still be based on "personal involvement in the alleged wrongs");

22

*Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (liability must be demonstrated by showing that the defendant personally directed or, with actual knowledge, acquiesced in the conduct). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08. Such allegations, however, must be made with appropriate particularity, including identification of each defendant's actions upon which the claim is based, the factual basis for the defendant's knowledge of the wrongdoing of another if such knowledge is an element of the claim, and, to the extent possible, the time and place of relevant events. *See Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08.

In addition, Rule 8 of the Federal Rules of Civil Procedure requires that a pleading contain, *inter alia*, "a short and plan statement of the claim showing that the pleader is entitled to relief," and averments that are "simple, concise, and direct." FED. R. CIV. P. 8(a)(2), (d)(1). Taken together, Rules 8(a) and 8(d)(1) "underscore the emphasis placed on clarity and brevity by the federal pleading rules." *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 702 (3d Cir. 1996) (citation omitted). The complaint "must not be 'so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by'" Rule 8. *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008) (quoting *Phillips*, 515 F.3d at 233). Dismissal pursuant to Rule 8, however, is generally reserved for situations "where the 'complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Ruther v. State Kentucky*

23

*Officers*, 556 F. App'x 91, 92 (3d Cir. 2014) (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).

Defendants move to dismiss the claims against Innis, Bohinski, Contreras, Ashton, Gavlick, Guzenski, Goyne, Austin, Reich, and Namowicz based on Barnes' failure to establish their personal involvement in violation of Rules 8 and 12. (Doc. 35, at 27-29). Defendants maintain that Barnes' amended complaint violates Rule 8 because he "simply lodged all conditions of confinement claims against each of these ten Defendants without any specification or further detail as to what he claims each individual did, knew, and when." (*Id.* at 28).

The Court disagrees with Defendants that the amended complaint violates Rule 8. Barnes asserts that Defendants Innis, Bohinski, Contreras, Ashton, Gavlick, Guzenski, Goyne, Austin, Reich, and Namowicz are members of the PRC. (Doc. 28 ¶¶ 12, 14). Barnes first alleges that he appealed the Hearing Examiner's finding of guilt to the PRC—consisting of Defendants Contreras, Goyne, and Namowicz—who issued a decision upholding the finding of guilt. (*Id.* ¶ 12). He then alleges that he complained about the conditions of confinement in the RHU to the PRC—consisting of Defendants Bohinski, Innis, Goyne, Guzenski, Reich, Ashton, Austin, Contreras, and Gavlick—either through written correspondence, grievances, or during their rounds in the RHU. (*Id.* ¶ 14). Barnes alleges that Defendants Bohinski, Innis, Goyne, Guzenski, Reich, Ashton, Austin, Contreras, and

24

Gavlick are "responsible for the full operation of the RHU[,]" they "did rounds every week in the RHU[,]" but failed to intervene in the alleged unconstitutional conditions. (*Id.*).

The Court finds that Barnes has set forth plausible claims against Defendants Innis, Bohinski, Contreras, Ashton, Gavlick, Guzenski, Goyne, Austin, Reich, and Namowicz at this juncture. A liberal reading of the amended complaint suggests that these individuals were personally involved in the alleged wrongdoing or had notice of them and failed to take action to correct them. Additionally, the amended complaint is not "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Ruther,* 556 F. App'x at 92 (quoting *Simmons*, 49 F.3d at 86). The Court, therefore, declines to grant Defendants' motion to dismiss on this ground with respect to the claims against Defendants Innis, Bohinski, Contreras, Ashton, Gavlick, Guzenski, Goyne, Austin, Reich, and Namowicz.

H.   The Defamation, Slander, and Libel Claims by Defendant Treverthan are Barred by the Statute of Limitations

Defendants argue that Barnes' claims of defamation, slander, and libel by Treverthan are barred by the applicable statute of limitations. (Doc. 35, at 29-30). The Court agrees and finds that Barnes' claims of defamation, slander, and libel by Defendant Treverthan are barred by Pennsylvania's one-year statute of limitations. *See* 42 Pa.C.S. § 5523(1). Because the alleged statements were made on September 13, 2023, and the instant action was not filed until February 2025, these claims are time-barred by Pennsylvania's one-year

statute of limitations period for defamation, slander, and libel claims, and they will be dismissed with prejudice and without leave to amend. *See* 42 Pa.C.S. § 5523(1).

I.    All Defendants are Entitled to Sovereign Immunity on the State Tort Claims of Defamation, Slander, Negligence, and Civil Conspiracy

Additionally, Defendants argue that the state tort claims of defamation, slander, negligence, and civil conspiracy must be dismissed because all Defendants are entitled to sovereign immunity on these claims. (Doc. 35, at 30-32).

In Pennsylvania, sovereign immunity applies to intentional torts committed by Commonwealth defendants acting in their individual capacities. *See Sears v. Mooney*, No. 1:17-cv-50, 2019 WL 6726839, at *17 (M.D. Pa. Dec. 11, 2019) (citation omitted). Sovereign immunity "applies to Commonwealth employees in both their official and individual capacities, so long as the employees are 'acting within the scope of their duties.'" *Larsen v. State Emps' Ret. Sys.*, 553 F. Supp. 2d 403, 420 (M.D. Pa. 2008). As a general matter, subject only to ten specific statutory exceptions not applicable here, this sovereign immunity bars state law tort claims like the one alleged here, since Commonwealth employees are immune from liability for either negligence or intentional torts.[4] *McGrath v. Johnson*, 67 F.Supp.2d 499, 511 (E.D. Pa. 1999), *aff'd*, 35 F. App'x 357 (3d Cir. 2002).

---

[4]    The ten categories for which sovereign immunity will not apply are: (1) vehicles in the possession or control of a Commonwealth party; (2) acts of health care employees of Commonwealth agency medical facilities or institutions; (3) the care, custody, or control of personal property; (4) a dangerous condition of Commonwealth agency real estate and sidewalks; (5) dangerous conditions of highways created by potholes or sinkholes; (6) the care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse. *See* 42 PA. CONS. STAT. ANN. § 8522(b).

26

Here, the allegations of the amended complaint imply that Defendants were acting within the scope of their employment. Accordingly, they are entitled to sovereign immunity. Thus, the Court will grant Defendants' motion to dismiss the state tort claims of defamation, slander, negligence, and civil conspiracy. These claims will be dismissed with prejudice and without leave to amend.

J.      Requests for Declaratory or Injunctive Relief

Defendants next argue that Barnes' requests for declaratory or injunctive relief must be dismissed on two grounds. (Doc. 35, at 32-34). The Court agrees.

First, the amended complaint only alleges past conduct—the amended complaint fails to allege any ongoing violations of Barnes' constitutional rights. (See Doc. 28). Declaratory relief is not meant to adjudicate alleged past unlawful activity. There is no question that Barnes can request declaratory relief to remedy alleged ongoing violations of his constitutional rights. *See Blakeney v. Marsico*, 340 F. App'x 778, 780 (3d Cir. 2009) (Third Circuit held that to satisfy the standing requirement of Article III, a party seeking declaratory relief must allege that there is a substantial likelihood that he will suffer harm in the future) (citations omitted). However, Barnes is not entitled to declaratory relief that any Defendant violated his rights in the past, as he alleges. *See Wenzig v. Serv, Emps. Int'l Union Loc. 668*, 426 F. Supp. 3d 88, 100 (M.D Pa. 2019), *aff'd sub nom. Diamond v. Pennsylvania State Educ. Ass'n*, 972 F.3d 262, 265 (3d Cir. 2020), *cert. denied*, 141 S. Ct. 2756 (2021) (although "[t]here is no question that a plaintiff can request declaratory relief to

remedy alleged ongoing violations of her constitutional rights"…declaratory relief "is not meant to adjudicate alleged past unlawful activity.").

Second, Barnes is no longer housed at SCI-Dallas. The case or controversy requirement of Article III, § 2 of the United States Constitution subsists through all stages of federal judicial proceedings. Parties must continue to have a "personal stake in the outcome of the lawsuit." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990); *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). The mootness doctrine recognizes that "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir. 1996). An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims. *Abdul-Akbar v. Watson*, 4 F.3d 195, 206-07 (3d Cir. 1993); *see Griffin v. Beard*, 401 F. App'x 715 (3d Cir. 2010) (transfer from SCI-Huntingdon renders inmate injunctive relief claim moot). In light of Barnes' transfer from SCI-Dallas, the institution wherein the allegations related to his claims stem, his requests for declaratory and injunctive relief are now moot and will be dismissed with prejudice and without leave to amend.

K.    Motion to Strike Under Federal Rule of Civil Procedure 12(f)

Defendants also request that the Court strike, as irrelevant, the improperly included references to and summarization of legal precedent or standards in the amended complaint. (Doc. 35, at 34-35 (moving to strike pages 15-18 of the amended complaint)).

Rule 12(f) of the Federal Rules of Civil Procedure allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." FED. R. CIV. P. 12(f). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief." *Del. Health Care Inc. v. MCD Holding Co.*, 893 F. Supp. 1279, 1292 (D. Del. 1995). "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *In re Shannopin Mining Co.*, No. 96-cv-02185, 2002 WL 31002883, at *28 (W.D. Pa. July 15, 2002). "A 'scandalous' matter or pleading is one that casts a derogatory light on someone, uses repulsive language, or detracts from the dignity of the court." *Carone v. Whalen*, 121 F.R.D. 231, 232 (M.D. Pa. 1988).

"The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Simmons v. Simpson House, Inc.*, 224 F. Supp. 3d 406, 421 (E.D. Pa. 2016) (quotation and citation omitted). "Relief under Rule 12(f) is generally disfavored and will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Id.* (quotation and citation omitted). "Motions to strike are decided on the pleadings alone[ ] and should not be granted unless the relevant

29

insufficiency is 'clearly apparent.'" *Thomas v. Keystone Real Est. Grp.*, No. 14-cv-00543, 2015 WL 1471273, at *6 (M.D. Pa. Mar. 31, 2015) (quoting *Cipollone v. Liggett Grp., Inc.*, 789 F.2d 181, 188 (3d Cir. 1986)).

The Court will not strike pages 15 through 18 of the amended complaint. As stated, Rule 12(f) relief will be denied unless the allegations have no possible relation to the matter at hand. *See Simmons*, 224 F. Supp. 3d at 421. Barnes' summarization of caselaw and references to statutes is not so immaterial or irrelevant that it has no relationship to the claim for relief. *See Mifflinburg Tel., Inc. v. Criswell*, 80 F. Supp. 3d 566, 572 (M.D. Pa. 2015) (citations omitted) (as a general rule, motions to strike are disfavored, and "should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some significant form of prejudice to one of the parties to the action"). The Court will deny Defendants' motion to strike.

### L.    Defendant Ransom

Federal Rule of Civil Procedure 25(a) governs substitution of a party upon death:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

FED. R. CIV. P. 25(a)(1).

Defendants filed their suggestion of death on April 14, 2025. (Doc. 13). More than 90 days have elapsed since Defendants filed and served their statement noting Ransom's

death, and a motion for substitution has not been filed.  Accordingly, the Court will dismiss Defendant Ransom as a party to this action.

## IV.    Leave to Amend

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant Barnes leave to file a second amended complaint unless amendment would be inequitable or futile.  *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002).  The Court finds that amendment of the following claims would be both futile and inequitable because they are actually and legally flawed—(1) the First Amendment retaliation claim against Defendant Treverthan; (2) the Eighth Amendment claim against Defendant Treverthan; (3) the procedural due process claims against Defendants McKeown and Hogan; (4) the substantive due process claim against Defendant Hogan; (5) the defamation, slander, and libel claims against Defendant Treverthan as barred by the statute of limitations; (6) the state tort claims of defamation, slander, negligence, and civil conspiracy based on sovereign immunity; (7) the claims for declaratory and injunctive relief; and (8) the claims against Defendant Ransom.

Moreover, Barnes has "already had two chances" to set forth his claims.  *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story").

31

## V.    Conclusion

Consistent with the foregoing, Defendants' motion to dismiss will be granted in part and denied in part.  (Doc. 32).  A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: July _2_, 2026